# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MATHIAS D. PETTY,

               Petitioner,      :      Case No. 2:18-cv-586

   - vs -                             District Judge Algenon L. Marbley
                                         Magistrate Judge Michael R. Merz

LYNEAL WAINWRIGHT, WARDEN,
 Marion Correctional Institution

                                        :

               Respondent.

# SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 19) to the Magistrate Judge's Report and Recommendations ("Report," ECF No. 18) which recommended that the Petition be dismissed with prejudice. District Judge Marbley has recommitted the case for reconsideration in light of the Objections (ECF No. 20).

**Procedural Objection: The Report Was Too Hasty**

Petty's first Objection is that the Magistrate Judge rendered a Report too quickly. He notes that the Report was filed a mere ten days after the reference was transferred from Magistrate Judge Jolson (ECF No. 19, PageID 1482). The record shows that the Transfer Order was docketed at 5:03 p.m. on April 1, 2019, and the Report at 10:40 a.m. on April 9, 2019, less than six court working days later. Petty calls this speed "at best troubling" and implies that the "quite voluminous" record which raises claims of "first impression" was not properly considered.

1

Petty's habeas corpus case has been pending for almost one year. It had been ripe for decision for three months before it was transferred from Judge Jolson. As the Report notes, the transfer was made "to help balance the workload in the District." (ECF No. 18, PageID 1465.)

The 1960's saw the substantial expansion of application of the Bill of Rights to state criminal cases during the tenure of Chief Justice Earl Warren. Because the Supreme Court could not take every case in which these newly recognized rights required enforcement, the Court greatly expanded the scope of federal habeas corpus review in a trilogy of cases decided the same day in 1963. *Townsend v. Sain*, 372 U.S. 293, 313 (1963); *Sanders v. United States*, 373 U.S. 1 (1963); and *Fay* v. *Noia*, 372 U.S. 391 (1963). The next year Congress passed the Civil Rights Act which, particularly in its prohibition of employment discrimination, again expanded the district court dockets. Congress did not create district judgeships fast enough to handle the increased workload, so instead it created the office of United States Magistrate in 1968 to manage these cases when referred. That still did not suffice, so in the early 1980's the judiciary began employing staff attorneys, known as pro se law clerks, to assist with prisoner cases. Even with all this help, many courts have a substantial backlog of prisoner cases. In this District, for example, there are eight pending habeas corpus cases not involving the death penalty that were filed in 2015 and 2016.

The undersigned serves as a recalled Magistrate Judge which means he is not assigned a regular docket of criminal work. Instead, he has specialized in habeas corpus cases, including those involving the death penalty. That specialization plus almost thirty-five years' experience with habeas cases, enables efficiency in handling these cases. Of course, there was no intention to file the Report without a sufficiently thorough consideration of the case. To the extent the Objections raise points not considered, they will be dealt with here.

**Substantive Objections**

**Ground One: Denial of Due Process and Fair Trial by Violation of Evidence Rules**

In his First Ground for Relief, Petty claims he was denied due process and a fair trial when Police Officer David Schulz was permitted to testify about the content of a written message he observed on a cell phone screen. The Tenth District Court of Appeals had decided this claim adversely to Petty on direct appeal. *State v. Petty,* 2017-Ohio-1062, ¶¶ 47-55 (10th Dist. Mar. 23, 2017)(quoted in the Report at PageID 1469-71).

Petty argued Ground One in his Petition on the basis that the testimony was hearsay, lacked foundation, and violated the best evidence rule. Respondent argued that these are all Ohio evidence law rules and those rules are not imposed by the United States Constitution. The Report accepted that argument on the merits and also found the second and third objections were procedurally defaulted because no contemporaneous objection was made (Report, ECF No. 18, PageID 1472-75).

Petty objects that admission of evidence without a foundation "implicated petitioner's right to a fundamentally fair trial." (ECF No. 19, PageID 1484, citing *United States v. Allen*, 106 F.3d 695 (6th Cir. 1977).) In *Allen* the Sixth Circuit affirmed a conviction for drug dealing. The only place where the words "fundamentally fair trial" are used is as follows:

> *D. Cumulative Error.*
>
> Finally, Allen claims that certain errors committed by the district court cumulatively deprived him of his right to a fundamentally fair trial. This contention is meritless for the simple reason that the district court did not commit the errors alleged. Accordingly, we reject Allen's claim of cumulative error.

*Id.* at 701. *Allen* certainly does not stand for the proposition that failure to lay a proper foundation

for admission of evidence deprives a defendant of a fair trial under the Sixth Amendment. No Supreme Court case law known to the Magistrate Judge clearly establishes that failure to lay a foundation or failure to enforce the best evidence rule violates the Constitution.

Petty also objects to the form of Officer Schulz's testimony (ECF No. 19, PageID 1484). It is apparent that Officer Schulz's memory of what he saw on the cellphone screen was not crystal clear, but he was honest about that. Nothing in the Constitution requires that a witness be absolutely certain of his recollection before he can testify. The officer was subject to cross-examination about his memory and defense counsel was completely free to comment on whatever weaknesses of memory were shown. But that does not make the testimony inadmissible.

The Objections argue that

> A manifest failure of a state court to follow its own procedures and to abide by its own laws clearly constitutes a violation of due process implicating the right to a fair trial where such substantive departures from the prescribed modes and forms of law results in unfair prejudice and a result which otherwise would not have occurred. So says [sic] basic fairness and due process of law.

(ECF No. 19, PageID 1485.) Petty offers no citation for this proposition of law. In fact, the law is directly to the contrary. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993).

Petty also objects to the Report's conclusion that parts of Ground One were procedurally defaulted by failure to make a contemporaneous objection (ECF No. 19, PageID 1485). Petty

4

disputes this by claiming he preserved these claims "in a recognizable state statutory and federal constitutional context in each of the state courts and surely need do no more." *Id.*

The Tenth District Court of Appeals found from the record that Petty's counsel did not object until after Officer Schulz finished testifying. *State v. Petty*, 2017-Ohio-1062, ¶ 49. In the very next sentence, it held that that was not a contemporaneous objection as that term is used in Ohio law.[1] Raising a claim on appeal does not constitute making a contemporaneous objection, i.e., an objection when the error occurs so that the trial judge can correct the error. Petty points to no place in the record where a contemporaneous objection was made on any of the evidentiary grounds later raised on appeal.

**Ground Two: Insufficient Evidence to Convict**

In his Second Ground for Relief, Petty asserted that there was insufficient evidence to show that he was a repeat violent offender. The Report noted that this claim had been raised on direct appeal and decided adversely to Petty (ECF No. 18, quoting *State v. Petty*, 2017-Ohio-1062, ¶¶ 56-59). Petty seemed to be arguing in his Reply that the State had to prove the rape was violent and the Report found, as had the Tenth District, that the General Assembly decided that sexual conduct with a person under thirteen constituted an offense of violence. There is no doubt that Petty engaged in sexual conduct with a person under thirteen – the victim testified to that fact and Petty was observed in the act by the victim's mother. No violence had to be proved. Moreover,

---

[1] "Such an objection, however, "must be 'contemporaneous' to the alleged error." *State v. Copley*, 10th Dist. No. 04AP-511, 2005-Ohio-896, ¶ 32, citing *State v. Murphy*, 91 Ohio St.3d 516, 532 (2001). Moreover, an objection on one ground does not preserve for appeal other grounds. *State v. Luc Tan Vu*, 10th Dist. No. 09AP-606, 2010-Ohio-4019, ¶ 30, citing *State v. Gulertekin*, 10th Dist. No. 97APA12-1607, 1998 Ohio App. LEXIS 5641 (Dec. 3, 1998). Thus, appellant did not preserve an objection based on lack of foundation.

for that offense the legislature had specified a term of ten years to life imprisonment, the sentence Petty received.

In his Objections Petty argues that the sentence imposed on him was improper without additional judicial fact findings (ECF No. 19, PageID 1486-90). He cites a number of Ohio cases having to do with the proper sentence for murder. He also cites the Court to Ohio Rev. Code § 2971.03(B)(1) which he says "makes manifest that for the offense of rape (as charged herein) the court shall impose either: (1) 'an indefinite prison term consisting of the following . . .a minimum term of ten year[s] and a maximum term of life imprisonment.'" *Id*. at PageID 1486. In contrast, he claims,

> O.R.C. Section 2971.02(B)[2] clearly distinguishes and provides for: " ... an offender under division (A)(1)(b) of this section "shall be sentenced to a prison term (meaning a singular 'definite' prison term); or, ... "term of life imprisonment," contemplates two distinctly different sentences of which such ambiguity must be "liberally construed" in petitioner's favor, and "strictly construed" against the respondent-state. See: O.R.C. Section 2904.01.

*Id.* at PageID 1487.

The Indictment charged Petty with engaging in sexual conduct with a twelve-year-old person having previously been convicted of aggravated robbery, in violation of Ohio Rev. Code § 2907.02 (State Court Record, ECF No. 12, PageID 113-14). Ohio Rev. Code § 2907.02(A)(1)(b) is the statute that classifies sexual conduct with a person under thirteen as rape. The trial court found that Ohio Rev. Code § 2971.03(A)(which relates to sexually violent offenders) was **not** applicable to this case Judgment Entry, State Court Record, ECF No. 12, PageID 128). She imposed an indefinite term of ten years to life for the rape count, twenty-four months for the importuning count, and three years for the repeat violent offender specification. *Id.* All three terms

---

[2] There is no such sub-section in Ohio Rev. Code § 2971.02, which addresses the "Procedure for determining sexually violent predator specification," and does not contain the language Petty purports to quote from that statute.

were to be served consecutively. *Id.* The term imposed on the rape count is the sentenced required by Ohio Rev. Code § 2971.03(B)(1): an indefinite term of ten years to life if life without parole is not imposed. There is no ambiguity in the statute and Petty was sentenced precisely to the sentence required by that statute, as the Tenth District found. The statute does not say ten years or life imprisonment, it says ten years to life.

Petty's further objection that the State was required to prove use of actual force is incorrect as a matter of state law which defines rape as a violent offense. Ohio Rev. Code § 2901.01(A)(9) as cited by the Tenth District. *Petty*, 2017-Ohio-1062 at ¶ 59.

**Ground Three: Convictions Against the Manifest Weight of the Evidence**

The Report recommended that Petty's Third Ground be dismissed because a manifest weight claim is not cognizable in habeas (Report, ECF No. 18, PageID 1477, citing *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986)). Petitioner objects, arguing that the Constitution requires proof of guilt beyond a reasonable doubt (Objections, ECF No. 19, PageID 1491).

A claim that a verdict is against the manifest weight of the evidence is different from a claim that a verdict is not supported by sufficient evidence. The Petition expressly raises a manifest weight claim (ECF No. 1, PageID 27), so the Magistrate Judge analyzed it as it was pleaded.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v.*

7

> *Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines

> whether in resolving conflicts in the evidence, the jury clearly lost
> its way and created such a manifest miscarriage of justice that the
> conviction must be reversed and a new trial ordered. . . .

*Martin,* 20 Ohio App. 3d 172, paragraph three of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . . This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable inferences
> from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, No. 3:03-po-002, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110

Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by the AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(*en banc*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (per curiam). And

second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ___, ___, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(*per curiam*); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*).

In the interest of fairness and completeness, the Magistrate Judge will reconsider Ground Three as raising a sufficiency of the evidence claim. On direct appeal to the Tenth District, Petty raised a claim about the evidence as his Third Assignment of Error and the Tenth District decided it as follows:

> **[*P60]** By his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. Under Ohio law, "[t]he weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other." *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 49, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997 Ohio 355, 684 N.E.2d 668 (1997). In considering a manifest weight challenge, "an appellate court may not merely substitute its view for that of the trier of fact." *Id.* The appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Reversing a conviction as against the manifest weight of the evidence "must be exercised with caution," and such a reversal "is granted only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Brown*, 8th Dist. No. 98881, 2013-Ohio-2690, ¶ 27, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).
>
> **[*P61]** R.C. 2907.02(A)(1) defines rape in part as follows: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * *

* (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.07(A) defines importuning as follows: "No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."

**[\*P62]** Appellant argues that since there was conflicting testimony throughout the trial, the convictions for rape and importuning were against the manifest weight of the evidence. Appellant contends that the two different versions C.A. [the victim] presented of the events, first denying anything improper occurred and then changing her story after L.A. [the victim's mother] hit her and influenced her story, impugn her credibility. Appellant also argues that L.A. presented conflicting testimony regarding whether or not appellant was facing her as she looked through the front door and stepped onto the porch. Further, appellant contends that the lack of DNA evidence and the failure of officers to obtain C.A.'s cell phone with the Badoo messages contribute to the fact that the evidence does not support the convictions. According to appellant, his testimony was consistent with C.A.'s original version of events.

**[\*P63]** While there was conflicting testimony presented at trial, "an accused is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. The trier of fact, in this case, the jury, may take into consideration conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or resolving the discrepancies. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, citing *Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, 886 N.E.2d 893 (10th Dist.). "The finder of fact at trial is in the best position to weigh the credibility of testimony by assessing the demeanor of the witnesses and the manner in which they testify, their connection or relationship with the parties, and their interest, if any, in the outcome. The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact." *State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 39, 75 N.E.3d 1008.

**[\*P64]** On review, there was sufficient, competent, credible evidence provided at trial to permit reasonable minds to find appellant guilty of both offenses. Appellant admitted that he solicited C.A. for oral sex. As to the rape charge, C.A. testified that

in July 2014, she was 12 years of age. According to C.A., appellant unzipped his pants, "[h]e took it out, and I got down on my knees, and I started sucking - - I started giving oral sex." (Tr. Vol. II at 192.) C.A. put his penis in her mouth. Appellant "was moving my head" with his hand. (Tr. Vol. II at 193.) C.A.'s mother also testified that she saw her daughter on her knees "performing oral sex on him" and identified appellant at trial as the man on the porch. She saw his penis. She also observed appellant zip up his pants.

[*P65] Appellant also contends that his conviction for the repeat violent offender specification is against the manifest weight of the evidence. Similar to his sufficiency argument, previously addressed under the second assignment of error, appellant contends there was a lack of sufficient probative evidence involving the use of force.

[*P66] Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 32, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In order for an appellate court to reverse the judgment of a trial court on manifest weight grounds, the appellate court must unanimously disagree with the jury's resolution of the conflicting evidence. *Id.*

[*P67] In the second assignment of error, we determined that plaintiff-appellee, the State of Ohio, was not required to demonstrate violence as an element of rape in order to classify rape as an offense of violence for purposes of the repeat violent offender specification. "Offense of violence" is defined in R.C. 2901.01(A)(9), and includes 2907.02, rape, and 2911.01, aggravated robbery. Thus, appellant was convicted of a felony of the first degree that is an offense of violence (R.C. 2929.01(CC)(1)(a)) and was previously convicted of a felony of the first degree that was an offense of violence (R.C. 2929.01(CC)(2)); as such, he met the definition of a repeat violent offender.

[*P68] Based on this court's review of the record, we find that the jury could have reasonably believed the state's version of events. Furthermore, appellant admitted that he talked about oral sex with C.A. and that he solicited C.A. to perform oral sex on him. The state presented sufficient, competent, credible evidence to permit reasonable minds to find appellant guilty beyond a reasonable doubt of rape, importuning, and the repeat violent offender specification.

> We find the jury did not lose its way and create a manifest miscarriage of justice. Thus, the verdicts are not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

*Petty*, 2017-Ohio-1062.

The Sixth Circuit has held that a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. App'x 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

Considered as a sufficiency of the evidence claim, Petty's Ground Three is without merit. The test, as set out above, is whether there was evidence from which a reasonable juror could have found Petty guilty beyond a reasonable doubt. The victim not only testified she performed oral sex on Petty, but her mother testified she caught them at it. There is no doubt that oral sex is sexual conduct within the meaning of Ohio law or that the victim was actually twelve years old at the time.

Petty reminds the Court that he has cited a University of Tulsa College of Law commentary entitled "Adult Impersonation: Rape by Fraud as a Defense to Statutory Rape," by Russell and Kathryn Christopher, 101 Nw. U. L. Rev. 75 (2007)(copy filed as Addendum to Petition, ECF No. 2-1, PageID 43, *et seq.*). He objects that "[t]he magistrate (in his rush to judgment) completely forewent any review and consideration of that overwhelming 'mitigation evidence criteria' where clearly the state court record itself . . . spoke volumes to the necessity for doing so." (Objections, ECF No. 19, PageID 1491.)

The authors of the cited article begin by recognizing the traditional analysis of statutory

14

rape:

> The story goes something like this. A fifteen-year old, who plausibly looks eighteen, tells a nineteen-year old that s/he is eighteen. Reasonably relying on the juvenile['s] being above the age of consent, the nineteen-year old agrees to engage in intercourse with the fifteen-year old. As any issue-spotting first-year law student might instantly surmise, this is a story about statutory rape and the strict liability rule that a mistake about the victim's age, even when induced by the victim's false representation, is no defense. In "the immemorial tradition of the common law," and in most jurisdictions today, the nineteen-year old will be guilty of statutory rape. [footnotes omitted].

(Adult Impersonation, ECF No. 2-1, PageID 75-76.) That is not the part of the story the authors want to talk about. Instead, they say, the underage person has committed rape by fraud. They continue "[t]his Article argues that obtaining intercourse by what we term 'adult impersonation'—falsely representing one's age as above the age of consent—constitutes rape by fraud. **The issue of adult impersonation as rape by fraud has never before been raised.**" *Id.* at PageID 78 (emphasis supplied and footnote omitted).

Thus, the authors confirm Petty's claim that this is an issue of first impression. But a District Court has no authority to grant habeas corpus relief on the basis of such a claim. First of all, the claim was never presented to the state courts. But even if it had been, it could not form the basis of habeas relief. The writ can be granted only if a petitioner shows that he is imprisoned in violation of the Constitution as shown by clearly established Supreme Court precedent at the time the state court decided the case. While the argument made by the Christophers is intriguing, it has not yet been accepted by the Supreme Court as binding on the states. That is, the Supreme Court has never held that the states must recognize rape by fraud as a defense to statutory rape, much less rape of a person under thirteen, as occurred in this case. The victim in this case may indeed have misrepresented her age. She may even have appeared to be above the age of consent, which

is sixteen per Ohio Rev. Code § 2907.04. Under Ohio law, those facts do not matter and they do not mitigate the sentence which has ben mandated by the Ohio General Assembly, ten years to life imprisonment.

**Ground Four: Invalid Sentence**

In his Fourth Ground for Relief, Petty urges that his convictions for rape and importuning should have been merged under Ohio Rev. Code § 2941.25. The Report noted that the Tenth District had decided this claim under both the Double Jeopardy Clause of the Fifth Amendment and under the referenced Ohio statute. Reviewing only the Double Jeopardy part of that claim, the Report found that the Tenth District's decision was not an objectively unreasonable application of relevant Supreme Court precedent (ECF No. 18, PageID 1479).

Petty's Objections do not take issue with the Report's Double Jeopardy analysis, but focus on his allied offenses of similar import claim (ECF No. 19). The proper interpretation and application of Ohio Rev. Code § 2941.25 is a question of state law. On state law questions, a federal habeas court is bound by the interpretations of the relevant state court, even interpretations made in the case in suit. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), quoting *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

In this case the Tenth District thoroughly considered Petty's allied offense claim and found

that it was without merit, upholding the trial court's determination that the crime of importuning was complete before the rape began. *Petty*, 2017-Ohio-1062, ¶¶ 69-82. This habeas corpus court does not sit as a court of appeals to review the correctness of that conclusion.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge against respectfully recommends that it be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 9, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).