# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

MATHIAS D. PETTY,

                     Petitioner,          :     Case No. 2:18-cv-586

  - vs -                              District Judge Sarah D. Morrison
                                       Magistrate Judge Michael R. Merz

LYNEAL WAINWRIGHT, WARDEN,
 Marion Correctional Institution

                           :

                Respondent.

# SUBSTITUTED REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's "Secondary Objection and Rebuttal" (ECF No. 22) to the Magistrate Judge's Supplemental Report and Recommendations ("Supplemental Report," ECF No. 21). The District Judge assignment of the case was transferred to District Judge Sarah Morrison upon her appointment to the Court (ECF No. 23) and she has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 24).

So as not to burden the reader with multiple Reports, this Substituted Report contains all the analysis the Magistrate Judge believes is appropriate and substitutes to the two prior Reports (the "Original Report," ECF No. 18, and the Supplemental Report). Petitioner may either combine his objections in a response to this Substituted Report or rely on his prior filings.

Petitioner Mathias D. Petty filed this case *pro se* in the Northern District of Ohio on May 24, 2018 (ECF No. 1). On June 11, 2018, the case was transferred here by Order of Chief Judge Patricia Gaughan (ECF No. 4) and assigned to District Judge Algenon L. Marbley and Magistrate

Judge Kimberly A. Jolson. On Magistrate Judge Jolson's Order (ECF No. 6), the State filed the State Court Record and a Return of Writ (ECF Nos. 12, 13). The case became ripe on the filing of Petitioner's Traverse (ECF No. 16) and was transferred to the undersigned to help balance the workload in the District (ECF No. 17).[1]

Petty pleads the following grounds for relief:

> **GROUND ONE**: [C]onviction obtained in violation of evidentiary rule implicates due process and resulting in a trial that was/is fundamentally unfair. see: *United States v. Allen,* 106 F.3d 695 (6th Cir. 1997).

> **GROUND TWO**: Conviction obtained in violation of Fourteenth Amendment's Due Pro[cess] Clause, wherein the evidence admitted at trial was manifestly insufficient to support a conviction. see: *In re Winship* (1970), 397 U.S. 358, 364; 90 S. Ct. 1068; and J*ackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S. Ct. 2781.

> **GROUND THREE**: [C]onviction obtained in violation of due process and fundamental fairness where petitioner's convictions for "repeat violent offender" "use of force" and "rape and importuning" were against the manifest weight of the evidence.

> **GROUND FOUR**: [C]onviction obtained in violation of Fourteenth Amendment Due Process Clause, and that of the Federal Constitution's Fifth Amendment Double Jeopardy protections and prohibitions where the underlying sentence(s) were/are 'declared void' by operation of law, contrary to law, and patently exceed both state statutory and federal constitutional requirements. see: *Whalen v. United States* (1980), 445 U.S. 684, 689, 100 S. Ct. 1432; and, U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ, ch. 1, pt. A(4)(e) (2012).

(Petition, ECF No. 1, PageID 14, 18, 27, 29 (alterations in original)).

---

[1] Subsequent to the issuing of the Original and Supplemental Reports, the case was reassigned to from Judge Marbley to District Judge Sarah D. Morrison (ECF No. 23)d.

## Litigation History

In July 2014, Petty was indicted by a Franklin County grand jury on one count of rape in violation of Ohio Revised Code §2907.02 with the specifications that (1) the victim was less than thirteen and (2) that Petty was a repeat violent offender by virtue of his prior conviction for aggravated robbery. He was also charged with one count of importuning in violation of Ohio Revised Code §2907.07 (State Court Record, ECF No. 12, Ex. 1, PageID 113-14). Petty, through counsel, entered a not guilty plea and the case was set for jury trial. Prior to trial, the State of Ohio filed a notice of intent to introduce a certified copy of Petty's prior judgment entry to prove the aggravated robbery conviction. Petty waived his right to a jury trial on the repeat violent offender specification. *Id*. at Exs. 4-5, PageID 120-22. Following trial, the jury found Petty guilty of one count of rape and one count of importuning, and the trial court found him guilty of the repeat violent offender specification. *Id*. at Ex. 7, PageID 125-26. In September 2015, Petty was sentenced to serve an aggregate sentence of fifteen years to life. *Id*. at Ex. 8, PageID 127-29.

Petty, through counsel, filed an appeal of his conviction to the Tenth District Court of Appeals, Franklin County, Ohio. The court of appeals affirmed Petty's conviction but remanded to the trial court for resentencing. *State v. Petty*, 10th Dist. Franklin, Case No. 15AP-950, 2017-Ohio-1062 (Mar. 23, 2017), appellate jurisdiction declined, 151 Ohio St. 3d 1455, 2017-Ohio-8842 ("*Petty I*").

Pursuant to the remand, on April 26, 2017, the trial court made the required proportionality findings as dictated by the Court of Appeals and resentenced Petty to the same aggregate sentence of fifteen years to life. (State Court Record, ECF No. 12, Ex. 17, PageID 301-03). Petty, through counsel, timely appealed the resentence and the Court of Appeals affirmed the trial court's

judgment.  *State v. Petty*, 10th Dist. Franklin No. 17AP-385, 2017-Ohio-9200, (Dec. 21, 2017)

("*Petty II*").  Petty did not pursue an appeal to the Supreme Court of Ohio.


# Analysis


**General Objection:  The Magistrate Judge's Reports Are Too Hasty**


Although the Original Report explains why this case was ripe for decision when Petitioner

filed his Reply in January 2019, Petitioner objected that the undersigned filed that report April 9,

2019, "a mere (10) ten days" after the reference was transferred from Magistrate Judge Jolson

(Objections, ECF No. 19, PageID 1482).  In the Supplemental Report, the undersigned explained

his recall status and specialization in habeas corpus cases as the reason why he was able to work

on Petitioner's case immediately upon its transfer (ECF No. 21, PageID 1496-97).  Unsatisfied

with this explanation, Petitioner carried forward the objection in his Secondary Objections,

asserting again that there has been "the patent lack of adjudication [of] the matter."  (ECF No. 22,

PageID 1514).  Virtually every non-capital habeas corpus case becomes ripe for decision when the

petitioner files his reply, and this case was treated no differently from other habeas corpus cases.

He argues that this is a "case of first impression[,]" *id*. at PageID 1517, "requiring (at a minimum)

further fact-developing procedures[.]"  *Id*. at PageID 1515.  However, he never asked for discovery

or an evidentiary hearing and the latter would, in any event, be precluded by *Cullen v. Pinholster*,

563 U.S. 170 (2011).

**Ground One:  Denial of Due Process and a Fair Trial by Violation of Evidence Rules**

In his First Ground for Relief, Petty claims he was denied due process and a fair trial when Police Officer David Schulz was permitted to testify about the content of a written message he observed on a cell phone screen.

The Tenth District Court of Appeals stated the background facts of the case as follows:

> {¶ 4} In July 2014, C.A. began communicating through the Badoo app with a particular individual whose screen name was "T-h-a-i." They began talking about "[g]iving head, sex, stuff that shouldn't have been talking about." (Tr. Vol. II at 178.) C.A. did not tell this individual how old she was, and C.A. did not know the age of the other individual. C.A. testified that Thai first brought up the topic of oral sex on the app.

> {¶ 5} On July 5, 2014, C.A. and her mother went to the residence of C.A.'s aunt, located "[d]own the street," approximately ten minutes walking distance from their home. (Tr. Vol. II at 180.) Other family members and friends were at the residence.

> {¶ 6} C.A. and Thai were sending each other messages that evening. Later that evening, C.A. went outside "[b]ecause that person texted me saying, Oh, I want to come over, and I said okay." (Tr. Vol. II at 183.) In response to the nature of the messages, C.A. testified "[h]e was asking me the address. He was asking me if I was going to do it then. I needed to do it, and if I wasn't, then he doesn't have to come." She defined "it" as he wanted her to "[p]erform oral sex." (Tr. Vol. II at 184.)

> {¶ 7} At trial, C.A. identified appellant as Thai. Thai arrived at the address that evening and C.A. described the events, as follows:

>> I sat there for a minute, and I was just texting. And he said, You look pretty occupied, and I said okay. * * * Then he said, If you're not going to do it, I can just leave. * * * I said okay, and I stopped texting. * * * He asked me if I wanted to - - if I was going to pull it out or if he was.

5

(Tr. Vol. II at 191.)

> {¶ 8} C.A. testified that appellant was talking about "[h]is penis." He unzipped his pants. "He took it out, and I got down on my knees, and I started sucking - - I started giving oral sex." (Tr. Vol. II at 192.) C.A. put appellant's penis in her mouth. Appellant "was moving my head" with his hand. (Tr. Vol. II at 193.) C.A. was on the porch with him for "[t]en, fifteen minutes." (Tr. Vol. II at 198.)

*Petty I*, 2017-Ohio-1062.

As part of the proof of the importuning charge, Columbus Police Officer David Schulz testified to being dispatched to the scene of the alleged crime at about 11:30 p.m. on July 5, 2014. He was given the victim's cell phone. Although he did not keep the phone, he testified to the content of text messages between Petitioner and the victim, C.A., transmitted through an application called Badoo which were "trying to establish a basic contact and, specifically for that day, trying to set up a meeting day or meeting time and place between [C.A.] and the other individual." *Petty I*, 2017-Ohio-1062, at ¶¶ 14-15 (brackets in original). Defendant's counsel objected but the objection was overruled. *Id*. at ¶ 18. On appeal, the Tenth District decided this claim as follows:

> {¶ 47} On appeal, appellant argues the trial court should have excluded evidence concerning the text messages on multiple grounds, including that (1) the content of the messages constituted hearsay within hearsay and should have been excluded under Evid.R. 805, (2) the messages lacked proper foundation because the witness lacked personal knowledge, pursuant to Evid.R. 602, and (3) the evidence should have been excluded under the best evidence rule pursuant to Evid.R. 1002.

> {¶ 48} As noted, appellant objected during Officer Schulz's testimony, but parts of the transcript are marked as inaudible with respect to the supporting argument. The nature of the objection is hearsay based on an argument that the messages only showed one-half of the conversation between C.A. and appellant. Initially, we note these messages are not hearsay. Evid.R. 801(D)(2) provides that statements are not hearsay if: "[t]he statement is offered against

a party and is (a) the party's own statement, in either an individual or a representative capacity." Here, appellant admitted he sent the text messages through the Badoo app and that he solicited C.A. Further, C.A. testified regarding the messages and she was subject to cross-examination.

{¶ 49} It was not until after Officer Schulz finished testifying that defense counsel articulated a lack-of-foundation objection. Such an objection, however, "must be 'contemporaneous' to the alleged error." *State v. Copley*, 10th Dist. No. 04AP-511, 2005-Ohio-896, ¶ 32, citing *State v. Murphy*, 91 Ohio St.3d 516, 532(2001). Moreover, an objection on one ground does not preserve for appeal other grounds. *State v. Luc Tan Vu*, 10th Dist. No. 09AP-606, 2010-Ohio-4019, ¶ 30, citing *State v. Gulertekin*, 10th Dist. No. 97APA12-1607, 1998 Ohio App. LEXIS 5641 (Dec. 3, 1998). Thus, appellant did not preserve an objection based on lack of foundation.

{¶ 50} On appeal, appellant appears to argue that his untimely lack-of-foundation objection includes an objection based on the best evidence rule. Appellant, however, made no objection based on the best evidence rule. Having failed to object on this ground, appellant waived all but plain error.

{¶ 51} Under Crim.R. 52(A), an appellate court may notice plain errors affecting substantial rights even though they were not brought to the attention of the trial court. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Notice of plain error is taken "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Long*, 53 Ohio St.2d 91, paragraph three of the syllabus.

{¶ 52} Appellant appears to argue that the outcome of the trial would have been different because absent Officer Schulz's testimony regarding the messages, appellant would not have testified at trial. Appellant has failed to demonstrate plain error, as the testimony regarding the messages was admissible as a party-opponent admission. Further, appellant admitted he met C.A. through the Badoo app and that they exchanged messages. Appellant's trial counsel noted in opening statement that appellant sent the messages and arranged to meet C.A. C.A. also testified regarding the messages.

{¶ 53} Appellant argues that Officer Schulz did not have personal knowledge of the name of the application the two used for text

messages, that he did not confirm the owner of the phone, and that he was told by a third party that appellant was a party to the text messages. Evid.R. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Here, Officer Schulz testified to what he read on the phone, and the officer had personal knowledge regarding what he read. Further, appellant and his counsel admitted appellant sent the messages. On review, there is no plain error regarding a lack of foundation.

{¶ 54} Finally, appellant argues that the trial court should have excluded the testimony regarding the messages under the "best evidence rule." Evid.R. 1002 requires that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." When there is other evidence sufficient to sustain a conviction, a best evidence error is harmless because the outcome of the proceedings would not be different. *State v. Salaam*, 1st Dist. No. C-150092, 2015-Ohio-4552, ¶ 11. If a defendant has not demonstrated prejudice, any violations of the best evidence rule do not require reversal. *State v. Rogan*, 94 Ohio App.3d 140 (2d Dist.1994).

{¶ 55} Here, even assuming that admission of the testimony regarding the contents of the text messages violated the best evidence rule, any error in admitting that testimony was harmless. Appellant described the text messages and admitted he solicited C.A. In addition to Officer Schulz, C.A. testified regarding the messages, and both witnesses were subject to cross-examination. Even without the testimony regarding the messages and appellant's admission, C.A. testified that appellant solicited her when he arrived on the porch. Accordingly, appellant has failed to demonstrate plain error. Based on the foregoing, appellant's first assignment of error is overruled.

*Petty I*, 2017-Ohio-1062.

In arguing his First Ground for Relief, Petty asserts Officer Schulz's testimony about the content of the text messages should have been excluded because they "clearly constitute[d] hearsay within hearsay" and "lacked any and all proper foundation." Petition, ECF No. 1, PageID 16 (citing Fed.R.Evid. 602, 805, 1002).

Respondent argues this First Ground is not cognizable in habeas because it raises only questions of state evidence law. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 16 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248, 253 (6th Cir. 2018) (Thapar, J., concurring).

On appeal to the Tenth District, Petty's claims were that admission of the content of the texts violated the rule against hearsay, violated the rule requiring a witness have personal knowledge of the matter to which he testifies, and violated the best evidence rule. Petty points to no authority from the Supreme Court, or indeed any other federal authority, holding that violation of any of those state evidence rules also violates the Constitution. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720, 726 (6th Cir. 1985). Violation by a state of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995). Therefore, Petty's claim that the trial court violated his due process and fair trial rights by admitting this

testimony fails to state a claim upon which habeas corpus relief can be granted.

Furthermore, Petty procedurally defaulted the second and third parts of this claim by not making a contemporaneous objection. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "[A]bsent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman*, 501 U.S., at 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the

> exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111
> S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017).

The United States Court of Appeals for the Sixth Circuit requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> 	. . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d at 138; accord: *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio does indeed have a relevant procedural rule requiring a contemporaneous objection to trial error to allow the trial court to correct the error if possible. The Tenth District enforced that rule against Petty by reviewing these two sub-claims only for plain error. An Ohio state

appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (plain error review does not constitute a waiver of procedural default); accord: *Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus— is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). See also *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011).

Finally, Petty has not established cause and prejudice to excuse the lack of a contemporaneous objection. If these objections had clear merit, then it would have been ineffective assistance of trial counsel to fail to raise them. But, as the Tenth District held on appeal, they did not have merit. Admissions of a party opponent, such as Mr. Petty, are excepted from the hearsay rule under Ohio R. Evid. 801(D). Officer Schulz satisfied Ohio R. Evid. 602 because he

actually saw the messages and was testifying about what he saw. The Tenth District did not decide

the best evidence question, but found any failure to satisfy it was harmless because Petty himself

admitted to having texted the victim. *Petty I*, 2017-Ohio-1062, at ¶¶ 52-55/

Ground One should therefore be dismissed with prejudice.


**Ground Two: Insufficient Evidence to Convict**


In his second Ground for Relief, Petitioner asserts he was convicted on insufficient

evidence, specifically that it was not shown that the instant rape was an offense of violence.

Petty raised this claim as his second assignment of error on direct appeal, and the Tenth

District decided it as follows:

> {¶ 56} By his second assignment of error, appellant contends the evidence was insufficient to establish the repeat violent offender specification attached to the rape count. Appellant argues there was a lack of sufficient probative evidence involving the use of force and, therefore, there was insufficient evidence to support the guilty verdict on the repeat violent offender specification.

> {¶ 57} When a defendant challenges the sufficiency of the evidence, an appellate court "'construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.'" *State v. Watkins*, 10th Dist. No. 16AP-142, 2016-Ohio-8272, ¶ 31, quoting *State v. Hill*, 10th Dist. No. 07AP-889, 2008-Ohio-4257, ¶ 41. When an appellate court conducts such a review, it "'does not engage in a determination of witness credibility, rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.'" *Id.*, quoting *Hill* at ¶ 41.

> {¶ 58} According to R.C. 2929.01(CC), repeat violent offender means a person about whom both of the following apply:

> > (1) The person is being sentenced for committing or for complicity in committing any of the following:

(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;

(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

{¶ 59} We note that the parties stipulated to appellant's prior conviction of aggravated robbery. Appellant argues the evidence failed to demonstrate that the rape was an offense of violence. The term "offense of violence" is defined in R.C. 2901.01(A)(9) as a violation of a number of sections of the Ohio Revised Code, including R.C. 2907.02, rape. Thus, it is not necessary to prove that a rape was committed with violence in order to qualify as an offense of violence. *State v. Tayse*, 9th Dist. No. 23978, 2009-Ohio-1209, ¶ 32 ("Under Ohio law, such conduct [sexual conduct with another person who is less than 13 years of age] is defined as rape, an offense of violence."). Appellant's second assignment of error is overruled.

*State v. Petty*, 2017-Ohio-1062.

While continuing to insist in his Petition on the argument he made before the Tenth District, Petty elaborates on it by claiming that the relevant sentencing statute, Ohio Revised Code § 2929.12(C), somehow creates an additional element of the crime of conviction (Secondary Objections, ECF No. 22, PageID 1521-22). The trial court imposed a sentence of ten years to life on the rape count. *Petty I*, 2017-Ohio-1062, at ¶ 40. The Tenth District specifically held that the sentencing statute applied by the trial court was the correct one under the facts of this case. *Id.* at ¶ 71. Petty's reference to the penalty mitigation factors of Ohio Revised Code § 2929.12(C) is irrelevant where, as here, the General Assembly has mandated a particular sentence for a particular crime. Petitioner's argument that no actual act of violence was shown to have occurred is also

irrelevant because the General Assembly has determined that sexual conduct with a person under thirteen constitutes a crime of violence—and the United States Constitution does not prohibit the State of Ohio from doing so.

In his Objections, Petty argues that the sentence imposed on him was improper without additional judicial fact findings (ECF No. 19, PageID 1486-90). He cites a number of Ohio cases having to do with the proper sentence for murder. *Id*.at PageID 1487-88, citing *State v. Houston*, 8th Dist. Cuyahoga No. 107538, 2019-Ohio-355; *State v. Smith*, 8th Dist. Cuyahoga No. 106893, 2019-Ohio-155, ___ N.E.3d ____ (Jan. 17, 2019), appellate jurisdiction declined at 155 Ohio St. 3d 1438, 2019-Ohio-1536. He also cites the Court to Ohio Rev. Code § 2971.03(B)(1) ,which he says "makes manifest that for the offense of rape (as charged herein) the court shall impose either: (1) 'an indefinite prison term consisting of the following . . .a minimum term of ten year[s] and a maximum term of life imprisonment.'" *Id*. at PageID 1486. In contrast, he claims,

> Section 2971.02(B)[2] clearly distinguishes and provides for: "... an offender under division (A)(1)(b) of this section "shall be sentenced to a prison term (meaning a singular 'definite' prison term);[""] or, ... "term of life imprisonment," contemplates two distinctly different sentences of which such ambiguity must be "liberally construed" in petitioner's favor, and "strictly construed" against the respondent-state. See: O.R.C. Section 2904.01.

*Id*. at PageID 1487.

The Indictment charged Petty with engaging in sexual conduct with a twelve-year-old person having previously been convicted of aggravated robbery, in violation of Ohio Rev. Code § 2907.02 (State Court Record, ECF No. 12, Ex. 1, PageID 113-14). Ohio Rev. Code § 2907.02(A)(1)(b) is the statute that classifies sexual conduct with a person under thirteen as rape. The trial court found that Ohio Rev. Code § 2971.03(A), which relates to sexually violent offenders, was not applicable to this case (Judgment Entry, State Court Record, ECF No. 12, Ex.

15

8, PageID 128). She imposed an indefinite term of ten years to life for the rape count, twenty-four months for the importuning count, and three years for the repeat violent offender specification. *Id.* All three terms were to be served consecutively. *Id.* The term imposed on the rape count is the sentenced required by Ohio Rev. Code § 2971.03(B)(1)(a): an indefinite term of ten years to life if life without parole is not imposed. There is no ambiguity in the statute and Petty was sentenced precisely to the sentence required by that statute, as the Tenth District found. *Petty I*, 2017-Ohio-1062, at ¶ 71. The statute does not require ten years **or** life imprisonment, it mandates "a minimum term of ten years and a maximum term of life imprisonment." Ohio Rev. Code § 2971.03(B)(1)(a). Petty's further objection that the State was required to prove use of actual force is incorrect as a matter of state law which defines rape as a violent offense. *Petty I*, 2017-Ohio-1062 at ¶ 59, citing Ohio Rev. Code § 2901.01(A)(9).

Petty's claim that this is a case of first impression relates to his argument that the victim committed fraud that induced him into having her perform oral sex on him while deceiving him about her age. At the time he filed his Petition, Petty provided the Court with Russell Christopher and Kathryn Christopher, *Adult Impersonation: Rape by Fraud As a Defense to Statutory Rape*, 101 N.W. L. Rev. 75 (2007) (filed at Addendum, ECF No. 2-1, PageID 43-91.) The article itself suggests that this would be a new defense. Ohio has never adopted that defense, nor has the United States Supreme Court ever held that Ohio or any State must recognize such a defense in a "statutory rape" case. Claiming such a defense is indeed a "case of first impression," but a District Court considering a habeas corpus case does not have the authority to recognize a defense such as this in the first instance. That recognition must come first from the United States Supreme Court.

Ground Two should therefore be dismissed.

**Ground Three:  Convictions Against the Manifest Weight of the Evidence.**


In this Third Ground for Relief, Petty asserts that his convictions are against the manifest weight of the evidence.  A manifest weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986).

In his Objections, Petty asserted that this claim was intended to raise an insufficiency of the evidence claim under *Jackson v. Virginia*, 443 U.S. 307 (1979) (ECF No. 19, PageID 1491, citing *Jackson*, 443 U.S. at 309).  As explained in the Supplemental Report, a claim that a verdict is against the manifest weight of the evidence is different from a claim that a verdict is not supported by sufficient evidence. The Petition expressly claims "[P]etitioner's convictions . . . were against the manifest weight of the evidence (ECF No. 1, PageID 27), so the Magistrate Judge analyzed it as it was pleaded.

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
>
> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the

jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on *its effect in inducing belief*." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. *See, also, State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 386-87. Having emphasized the distinction between a manifest weight claim and an insufficiency claim, the Supplemental Report went on to analyze how the evidence was sufficient to convict (Supplemental Report, ECF No. 21, PageID 1504-11). The Tenth District Court of Appeals had considered an insufficiency claim on direct appeal and found that the evidence was more than sufficient:

{¶ 60} By his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence. Under Ohio law, "[t]he weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other." *State v. Boone*, 10th Dist. No. 14AP-87, 2015-Ohio-2648, ¶ 49, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997 Ohio 355, 684 N.E.2d 668 (1997). In considering a manifest weight challenge, "an appellate court may not merely substitute its view for that of the trier of fact." *Id*. The appellate court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the

trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. Reversing a conviction as against the manifest weight of the evidence "must be exercised with caution," and such a reversal "is granted only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" State v. Brown, 8th Dist. No. 98881, 2013-Ohio-2690, ¶ 27, quoting State v. Martin, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

{¶ 61} R.C. 2907.02(A)(1) defines rape in part as follows: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.07(A) defines importuning as follows: "No person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person."

{¶ 62} Appellant argues that since there was conflicting testimony throughout the trial, the convictions for rape and importuning were against the manifest weight of the evidence. Appellant contends that the two different versions C.A. [the victim] presented of the events, first denying anything improper occurred and then changing her story after L.A. [the victim's mother] hit her and influenced her story, impugn her credibility. Appellant also argues that L.A. presented conflicting testimony regarding whether or not appellant was facing her as she looked through the front door and stepped onto the porch. Further, appellant contends that the lack of DNA evidence and the failure of officers to obtain C.A.'s cell phone with the Badoo messages contribute to the fact that the evidence does not support the convictions. According to appellant, his testimony was consistent with C.A.'s original version of events.

{¶ 63} While there was conflicting testimony presented at trial, "an accused is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. The trier of fact, in this case, the jury, may take into consideration conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or resolving the discrepancies. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, citing *Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, 886 N.E.2d 893 (10th Dist.). "The finder of fact at trial is in the best position to

weigh the credibility of testimony by assessing the demeanor of the witnesses and the manner in which they testify, their connection or relationship with the parties, and their interest, if any, in the outcome. The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact." *State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 39, 75 N.E.3d 1008.

{¶ 64} On review, there was sufficient, competent, credible evidence provided at trial to permit reasonable minds to find appellant guilty of both offenses. Appellant admitted that he solicited C.A. for oral sex. As to the rape charge, C.A. testified that in July 2014, she was 12 years of age. According to C.A., appellant unzipped his pants, "[h]e took it out, and I got down on my knees, and I started sucking - - I started giving oral sex." (Tr. Vol. II at 192.) C.A. put his penis in her mouth. Appellant "was moving my head" with his hand. (Tr. Vol. II at 193.) C.A.'s mother also testified that she saw her daughter on her knees "performing oral sex on him" and identified appellant at trial as the man on the porch. She saw his penis. She also observed appellant zip up his pants.

{¶ 65} Appellant also contends that his conviction for the repeat violent offender specification is against the manifest weight of the evidence. Similar to his sufficiency argument, previously addressed under the second assignment of error, appellant contends there was a lack of sufficient probative evidence involving the use of force.

{¶ 66} Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 32, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In order for an appellate court to reverse the judgment of a trial court on manifest weight grounds, the appellate court must unanimously disagree with the jury's resolution of the conflicting evidence. *Id*.

{¶ 67} In the second assignment of error, we determined that plaintiff-appellee, the State of Ohio, was not required to demonstrate violence as an element of rape in order to classify rape as an offense of violence for purposes of the repeat violent offender specification. "Offense of violence" is defined in R.C. 2901.01(A)(9), and includes 2907.02, rape, and 2911.01, aggravated robbery. Thus,

appellant was convicted of a felony of the first degree that is an offense of violence (R.C. 2929.01(CC)(1)(a)) and was previously convicted of a felony of the first degree that was an offense of violence (R.C. 2929.01(CC)(2)); as such, he met the definition of a repeat violent offender.

{¶ 68} Based on this court's review of the record, we find that the jury could have reasonably believed the state's version of events. Furthermore, appellant admitted that he talked about oral sex with C.A. and that he solicited C.A. to perform oral sex on him. The state presented sufficient, competent, credible evidence to permit reasonable minds to find appellant guilty beyond a reasonable doubt of rape, importuning, and the repeat violent offender specification. We find the jury did not lose its way and create a manifest miscarriage of justice. Thus, the verdicts are not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.

*Petty I*, 2017-Ohio-1062.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214) (the "AEDPA"), two levels of deference to state decisions are required:

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all

> sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011) (en banc);*Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008);.

Considered as a sufficiency of the evidence claim, Petty's Ground Three is without merit. The test, as set out above, is whether there was evidence from which a reasonable juror could have found Petty guilty beyond a reasonable doubt. The victim not only testified she performed oral sex on Petty, but her mother testified she caught them at it. There is no doubt that oral sex is sexual conduct within the meaning of Ohio law, or that the victim was actually twelve years old at the time.

In his Secondary Objections, Petty argues that somehow mitigation facts must enter into deciding this claim (ECF No. 22, PageID 1523). However, as the Tenth District found, the sentence prescribed by law for the offense of which Petty was convicted is mandatory. *Petty I,*

2017-Ohio-1062, at ¶ 71.

Ground Three should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted insofar as it raises a manifest weight claim, and on the merits insofar as it raises a sufficiency of the evidence claim.

**Ground Four: Invalid Sentence**

In his Fourth Ground for Relief, Petty urges his sentence is invalid because the trial court imposed sentence without exercising the discretion allegedly conferred by Ohio Revised Code § 2929.14 (Petition, ECF No. 1, PageID 32).[2] This is a question of state law which the Tenth District definitively decided against Petty. Although it remanded for a proportionality finding under Ohio Revised Code § 2929.14(C)(4), *Petty I*, 2017-Ohio-1062, at ¶¶ 93, 95, it otherwise overruled Petty's assignment of error regarding sentencing.

Petty also argues the sentence is invalid because the trial court should have found that the rape and importuning were allied offenses of similar import, not separately punishable under Ohio Revised Code § 2941.25 (Petition, ECF No. 1, PageID 30-32). The Tenth District considered this claim under both the Double Jeopardy Clause and Ohio Revised Code § 2941.25 and found no violation of either. It affirmed the trial court's findings that the act of importuning was completed before the rape began, involved separate conduct, and occasioned separate harm to the victim. *Petty I*, 2017-Ohio-1062, at ¶¶ 72-79.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

---

[2] Petty also refers to the United States Sentencing Commission Sentencing Manual (Petition, ECF No. 1, PageID 29). That Manual only applies to cases that are originally filed in federal court, and does not apply to state criminal cases.

> [It] "protects against a second prosecution for the same offense after
> acquittal.  It protects against a second prosecution for the
> same offense after conviction.  And it protects against multiple
> punishments for the same offense."

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717

(1969), abrogated in part on other grounds by *Alabama v. Smith*, 490 U.S. 794 (1989).  The Double

Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in

*Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes

is "whether each offense contains an element not contained in the other."  *United States v. Dixon*,

509 U.S. 688, 696 (1993), citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (the

"*Blockburger* test").  An Ohio court of appeals decision of a double jeopardy claim which is limited

to the application of Ohio Rev. Code § 2941.25, is entirely dispositive of the federal double

jeopardy claim.  *Jackson v. Smith*, 745 F.3d 206, 210 (6th Cir. 2014), citing *State v. Rance*, 85 Ohio

St. 3d 632, 705 (1999), overruled by *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314, itself

abrogated in part by *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 16.

Petitioner has not demonstrated that his convictions for rape and importuning violate the

Double Jeopardy Clause.  On their face the two crimes involved different elements:  asking for a

sexual act, and getting it.  Petty has not demonstrated that the Tenth District's decision on this

question is an objectively unreasonable application of relevant Supreme Court precedent,

*Blockburger* and its progeny.  In his original Objections, Petty did not take issue with this proposed

analysis of the Double Jeopardy claim.

The Objections do, however, take issue with this Court's analysis under Ohio Revised Code

§ 2941.25, the Ohio allied offenses statute (ECF No. 19, PageID 1492-93).  The Supplemental

Report noted that this was purely a question of state law on which a federal habeas court is bound

by state court interpretation (ECF No. 21, PageID 1511; accord *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), quoting *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

Therefore, Ground Four should be dismissed.

## Conclusion

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis.*

July 8, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days

because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).